THE PEOPLE OF THE STATE OF NEW YORK, APPELLANT, *v.* JOSEPHINE MILLER AND NELLIE RUSSELL, RESPONDENTS.

*Common council of Buffalo — power of that body to define who are disorderly persons — 1880, chap. 436 — jurisdiction of police justices of the city.*

The charter of the city of Buffalo empowered the common council to pass ordinances " to define and prevent disorderly conduct; to prevent all disorderly assemblages, all disturbing noise, all drunkenness in public places, and to punish vagrants, beggars and disorderly persons as defined by law."

*Held,* that under the power so conferred the common council could pass an ordinance defining what disorderly conduct was, and who should be deemed disorderly persons, and might include keepers of houses of ill-fame, and persons voluntarily residing therein, in the latter class, and provide for their punishment.

The defendant Miller was arrested without process and tried before a police justice of the city of Buffalo upon a charge of keeping a house of ill-fame, and upon conviction thereof was fined twenty dollars. The charter of the city of Buffalo confers upon the police justices power to try summarily persons brought before them on a charge of violating the city ordinances.

*Held,* that as it appeared that the defendant was tried upon a charge of keeping a house of ill-fame, which was a misdemeanor, and not as being a disorderly person as defined in the city ordinance, the justice had no jurisdiction over the case and that the conviction should be set aside.

APPEAL from a judgment and order of the Court of Sessions of Erie county, reversing a judgment of a justice of the peace designated to attend police station No. 1, in the city of Buffalo.

The respondents were arrested without process by the police of the city of Buffalo and brought before ANDREW J. DAYTON, one of the police justices, and the woman Miller was charged with the offense of keeping a house of ill-fame, and Nellie Russell as being an inmate of the same. They were summarily tried, the former being fined twenty dollars and the latter five dollars. From the conviction and the sentence they both appealed to the Erie County Court of Sessions, where both convictions were reversed. From the latter judgment the people appeal.

*Tracy C. Becker,* for the appellant.

*Andrews & Hill,* for the respondents.

BARKER, J. :

The people seek to sustain the conviction and sentence, as to Josephine Miller, upon the ground that it was fairly established on the trial that she was guilty of keeping a house of ill-fame, in the city of Buffalo, in violation of an ordinance duly enacted. If it be conceded that the evidence established that fact, then, it is claimed by her counsel, that the common council did not possess the power to pass an ordinance on the subject and the same is void. By the charter the common council were authorized to enact an ordinance " to define and prevent disorderly conduct ; to prevent all disorderly assemblages, all disturbing noise, all drunkenness in public places, and to punish vagrants, beggars and disorderly persons as defined by law." (See charter, chap. 519 of 1870, sub. 2, § 8, tit. 3.) Under the power conferred by these provisions the common council enacted the following ordinances :

" SECTION 1. Disorderly conduct is defined to be the conduct or commission of any of the acts prohibited in this chapter, and any person who shall do or commit any of said acts shall be guilty of disorderly conduct."

" SEC. 2. No person shall keep a house of ill-fame, house of prostitution, or assignation house within the city, or shall in any manner contribute to the support of such houses, or shall voluntarily reside therein." (Secs. 1 and 2, chap. 2.)

A fine not less than five dollars nor more than $100 was imposed for each violation of these ordinances. Keeping a house of ill-fame is made a misdemeanor by statute as it was also by the common law. (Penal Code, § 322; 2 Wharton's Crim. Law, § 1449.) As the act imputed to the accused is a crime by the general law of the State and ample provision is made for its detection and punishment, it is argued in behalf of the respondent that the provisions of the charter already quoted do not confer upon the common council the power of declaring that the keeping of a house of ill-fame is disorderly conduct. We do not concur in the limitations thus sought to be placed upon the authority of the common council, and are of the opinion that it possesses the power to enact ordinances on the subject and to punish the offender by the imposition of a fine. It will be observed that the common council has not attempted by any ordinance to punish an offender for keeping a house of ill-fame,

nor to interfere with the administration of laws pertaining to that subject, nor did the legislature intend to vest any such power in that body. It has simply declared by the ordinance that a person who keeps a house of ill-fame is a disorderly person. By subdivision 2, section 8, title 3, the common council are authorized to punish vagrants, beggars and disorderly persons as defined by law. The Code of Criminal Procedure has defined who are disorderly persons, and in terms includes all persons who keep a bawdy house or house for the resort of prostitutes. (Sec. 899.) This is but a re-enactment of the provisions of the Revised Statute on the same subject. (Vol. 2, page 903, 5th ed.) The keeper of a house of ill-fame is a disorderly person and his conduct tends to disturb the peace of the community where the brothel is located and it did not need legislation to declare him such. He is, however, by the statute, in distinct terms declared to be a disorderly person and also a criminal.

If this respondent kept a bawdy house as charged, she was liable to arrest and to be dealt with as a disorderly person, or she could have been indicted and punished as a criminal for keeping a house of that character. The offenses are separate and distinct and are made so by the statute. Her trial and conviction for either one of the charges would be no bar to a prosecution for the other, although each charge should be based on the same act, to wit, keeping a house of ill-fame. (*People* v. *Sadler*, 97 N. Y., 146.) These considerations as we think, fully meet and refute the attack made upon the validity of the city ordinances on that subject, as being without authority.

It is also argued in behalf of the accused, that the police justice at the time and place of the trial was without jurisdiction to hear and determine the charge made against her. The proceeding was summary and the justice before whom the conviction was had was acting as a justice of police, assigned to attend at the police station, as provided by section 23, chapter 436 of the Laws of 1880. By a provision of the charter police justices have and possess all the powers conferred by law upon justices of peace of towns, in proceedings in criminal cases and in the execution of the laws relative to the internal police of the state. The powers of the justice designated to attend at the police stations are clearly defined by the

act of 1880, as follows : " To try cases of drunkenness, vagrancy and all other offenses against any of the laws of this State or the ordinances of the city of Buffalo which may be tried summarily and without a jury, by a justice of the peace or a Court of Special Sessions committed by any person he shall find confined in the station house, and to sentence every person found guilty of any such offense pursuant to the statute or ordinance creating such offense." In all other cases said justice of the police shall have and possess the powers and jurisdiction conferred by the city charter, and shall proceed in all respects as therein mentioned. If the person found in the station-house and brought before the justice is charged with a criminal offense, it is his duty to enter the charge in a book kept for that purpose and send such person to the police justice for examination. If a person is charged with a violation of an ordinance of the city he is required to enter the charge in his book and to proceed in a summary manner to investigate the same, and if the accused is found guilty to impose the fine prescribed by the ordinance. It is thus clearly established that the justice to the police, as he is designated when attending at the station-house, possesses the power and jurisdiction to try in a summary manner and without a jury all persons charged with disorderly conduct as provided by the city ordinances. (*People ex rel. Murray* v. *Justices*, 74 N. Y., 406.)

We have, however, reached the conclusion that the judgment of reversal should be affirmed and the accused discharged for the reason that the record does not show that she was charged with the violation of any city ordinance, and the charge made was that of a misdemeanor for keeping a house of ill-fame. In the charge as made no reference is made to a city ordinance, nor is she charged with being a disorderly person. The justice states in his return that Josephine Miller was charged with keeping a house of ill-fame and the other defendant as being an inmate. It does not appear from the justice's return that the by-laws were given in evidence, and the proof tended to show that the respondent Miller was a keeper of a house of ill-fame.

If the accused was charged with disorderly conduct, as defined by the city ordinances, she had a right to take issue upon the existence of the ordinance, and to show, if she could, that it was not duly enacted and never became operative. The court cannot take judi-

cial notice of the existence of city ordinances, and in all proceedings against individuals charged with a violation of the same they are to be proved and read in evidence for the purpose of maintaining the charge of violating the same.

As to the respondent Miller, we are for the affirmance of the judgment of reversal, upon the ground that the record does not show that she was charged with being a disorderly person, or with violating the city ordinances on that subject, but, as it appears from the records, she was charged with the crime of keeping a house of ill-fame, a misdemeanor which the police justice had no jurisdiction to try and determine when acting as a justice to the police at the station-house.

As to the other respondent Nellie Russell, we are for an affirmance, upon the ground that it does not appear from the return of the justice that she was convicted of violating a city ordinance.

Judgment and order appealed from, affirmed.

SMITH, P. J., and BRADLEY, J., concurred.

Judgment and order of the Court of Sessions of Erie county affirmed.